**Michael SWANKS, Appellant,**

v.

**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, Appellee.**

No. 96-7078.

United States Court of Appeals, District of Columbia Circuit.

Argued March 20, 1997

Decided June 20, 1997

25. [    ]

26. [    ]

Karen E. McDonald, Washington, DC, argued the cause for appellant.

David R. Keyser, Assistant General Counsel, Washington Metropolitan Area Transit Authority, Takoma Park, MD, argued the cause for appellee. With him on the brief were Robert L. Polk, General Counsel, and Robert J. Kniaz, Deputy General Counsel, Washington, DC. Vincent A. Jankoski, Washington, DC, entered an appearance.

Frank A. Rosenfeld, Attorney, U.S. Department of Justice, Washington, DC, argued the cause for amicus curiae United States. With him on the brief were Frank W. Hunger, Assistant Attorney General, William G. Kanter, Deputy Director, and Eric H. Holder, Jr., U.S. Attorney.

Joseph R. Terry, Jr., Deputy General Counsel, Equal Employment Opportunity Commission, Memphis, TN, and Robert J. Gregory, Attorney, filed a brief on behalf of amicus curiae Equal Employment Opportunity Commission.

Before: WILLIAMS, SENTELLE and TATEL, Circuit Judges.

TATEL, Circuit Judge:

In this action we must decide whether appellant, alleging he was fired due to his disability, is barred from seeking relief under the Americans with Disabilities Act because he receives Social Security disability benefits. Because the Social Security Act and the ADA employ quite different standards and objectives—the ADA requires employers reasonably to accommodate the needs of otherwise qualified disabled individuals, while the Social Security Act awards benefits to persons who, because of their disability, cannot perform "work which exists in the national economy," 42 U.S.C. § 423(d)(2)(A) (1994), without regard to reasonable accommodation—we hold that the receipt of Social Security disability benefits does not preclude ADA relief.

I

For several years, ending October 1, 1992, appellee Washington Metropolitan Area Transit Authority employed appellant Michael Swanks as a Special Police Officer. Swanks suffers from spina bifida, a congenital spinal abnormality that in his case causes chronic urinary infections and incontinence. Because of his disability, Swanks was regularly absent from work and sometimes had an unpleasant body odor about which supervisors and coworkers complained. Swanks informed several supervisors of his disability and requested job duties requiring more exercise, which he claims would have accommodated his condition by reducing the frequency of his infections. A WMATA official rejected Swanks's request. WMATA never discussed or explored possible alternative accommodations.

On September 22, 1992, while Swanks was on duty, a supervisor asked him to produce his Special Police Certification. WMATA requires Special Police Officers like Swanks to have and maintain such certifications. Def.'s Mot. for Summ. J. Ex. B at 2. Unable to provide the certification, Swanks explained to the supervisor that he had left his certification along with his wallet in his brother-in-law's car. In fact, his certification had expired. During the following week, Swanks applied for a new certification, but before he could undergo the necessary physical examination, WMATA fired him.

Claiming discrimination in violation of the Americans with Disabilities Act, 42 U.S.C.

§ 12101 *et seq.,* Swanks filed suit in the United States District Court for the District of Columbia. Swanks contended that WMATA refused to accommodate his disability, then fired him because of it. WMATA moved for summary judgment, arguing that it fired Swanks because he lacked certification and lied, and that in any event, Swanks's application for and receipt of Social Security disability benefits barred ADA relief. Finding genuine issues of material fact, the magistrate judge denied summary judgment with respect to WMATA's claim that it fired Swanks because his certification expired and because he lied. *Swanks v. WMATA,* No. 94cv02421, slip op. at 3 (D.D.C. Mar. 5, 1996). However, holding that Swanks's application for and receipt of disability benefits barred his ADA claims, the magistrate judge entered summary judgment for WMATA: "Swanks claimed and was found disabled from employment as of October 1, 1992, the same date he was orally terminated from employment by WMATA. This disability determination renders the plaintiff unqualified for the position which he held either as it was or with a reasonable accommodation by the defendant." *Swanks,* slip op. at 6.

Swanks appealed. Because this case raises an important question regarding the effect of Social Security disability determinations on ADA claims, we invited the Social Security Administration and the Equal Employment Opportunity Commission (the agency charged with enforcing the ADA) to file amici curiae briefs. Our review is *de novo. Tao v. Freeh,* 27 F.3d 635, 638 (D.C.Cir.1994).

## II

The ADA provides "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). Among other things, the ADA protects against discrimination in employment, including hiring, firing, and advancement. *Id.* § 12112(a). This protection extends to "qualified individual[s] ... with disabilit[ies]"—persons who "with or without reasonable accommodation, can perform the essential functions of the employment position that [they] hold[ ] or

desire[ ]." *Id.* § 12111(8). Under the ADA, reasonable accommodation "may include ... job restructuring, part-time or modified work schedules, reassignment to ... vacant position[s], ... and other similar accommodations for individuals with disabilities." *Id.* § 12111(9).

The central question presented by Swanks's claim is whether he could have performed the essential duties of his job with reasonable accommodation. Instead of resolving this issue, the magistrate judge concluded that because Swanks sought and obtained Social Security disability benefits, he could not maintain an ADA claim. This conclusion rests on a misunderstanding of Social Security disability determinations; in assessing eligibility for disability benefits, the Social Security Administration gives no consideration to a claimant's ability to work with reasonable accommodation. Under the Social Security Act, an individual is entitled to disability benefits:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him.... For the purposes of the preceding sentence, ... "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

*Id.* §§ 423(a), 423(d)(2)(A). This inquiry focuses on the general availability of work and says nothing about reasonable accommodation, nor does the Act elsewhere address the effect of accommodation on a claimant's disability status.

The Social Security Administration, as authorized by the Social Security Act, *id.* at § 405(a), has established a five-step process to evaluate whether a claimant is disabled. 20 CFR § 404.1520 (1996); *see also Bowen v. Yuckert,* 482 U.S. 137, 140, 107 S.Ct. 2287, 2290–91, 96 L.Ed.2d 119 (1987). The agency

begins by determining whether the claimant is engaged in "substantial gainful activity." 20 CFR § 404.1520(b). If the answer is negative, the agency proceeds to step two, where it determines whether the claimant has a "severe" impairment. *Id.* § 404.1520(c). If the claimant is found to have a severe impairment, the agency moves to step three, determining whether the claimant's disability is "listed" at 20 CFR Part 404, Subpart P, App. 1. If, as in *Whitbeck v. Vital Signs, Inc.,* 116 F.3d 588 (D.C.Cir.1997), a decision we also issue today, the claimant has a listed impairment, e.g., certain disorders of the spine, amputation of both hands, loss of speech, chronic heart failure, sickle cell disease, or epilepsy, the agency finds the claimant disabled and awards benefits. 20 CFR § 404.1520(d).

For a claimant not having a listed impairment, the Social Security Administration proceeds to step four, determining whether the claimant can perform his or her past work. If the claimant can perform past work, the agency denies the claim. *Id.* § 404.1520(e). If the claimant cannot do his or her past work, the agency proceeds to step five, where, considering the claimant's age, educational experience, past work experience, and residual functional capacity, it determines whether the claimant can do "other work"—jobs "that exist in significant numbers in the national economy." *Id.* §§ 404.1520(f), 404.1560(c).

Nowhere in this five-step process does the Social Security Administration take account of the possible effect of reasonable accommodation on a claimant's ability to work. At step three, for example, claimants who are not working and who have listed disabilities automatically receive benefits. Steps four and five—the levels after which Swanks was awarded disability benefits—likewise do not consider reasonable accommodation. For past relevant work (step four), the Social Security Administration considers only "the physical and mental demands of ... work [the claimant] ha[s] done in the past." *Id.* at § 404.1560(b). Where, as here, a claimant had no accommodation in his or her past work, a Social Security Administration determination that the claimant cannot do past work says nothing about the claimant's ability to perform his or her former job with reasonable accommodation. In an Information Memorandum, the Social Security Administration explains:

> The fact that an individual may be able to return to a past relevant job, provided that the employer makes accommodations, is not relevant.... A finding of ability to do past relevant work is only appropriate if the claimant retains the capacity to perform either the actual functional demands and job duties of the particular past relevant job ... or the functional demands and job duties of the occupation as generally required ... throughout the national economy.

DANIEL L. SKOLER, ASSOC. COMM'R, SOC. SEC. ADMIN., DISABILITIES ACT INFO. MEM. at 2 (June 2, 1993) (No. SG3P2). The step five determination—whether the claimant qualifies for "jobs that exist in significant numbers in the national economy," 20 CFR § 404.1560(c)—also inquires about the general availability of particular types of work. According to Social Security regulations, "[i]solated jobs that exist only in very limited numbers" are not sufficient to demonstrate that a claimant can do "other work." *Id.* § 404.1566(b); *see Overton v. Reilly,* 977 F.2d 1190, 1196 (7th Cir.1992). In its Information Memorandum, the Social Security Administration explains:

> [T]he fifth-step assessment is based on the functional demands and duties of jobs as ordinarily required by employers throughout the national economy, and not on what may be isolated variations in job demands (regardless of whether such variations are due to compliance with anti-discrimination statutes or other factors). Whether or how an employer might be willing (or required) to alter job duties to suit the limitations of a specific individual would not be relevant.... To support a fifth-step finding that an individual can perform "other work," the evidence ... would have to show that a job, which is within the individual's capacity because of employer modifications, is representative of a significant number of other such jobs in the national economy.

DISABILITIES ACT INFO. MEM. at 3; *see also Eback v. Chater,* 94 F.3d 410, 412 (8th Cir. 1996) (relying on same language).

Both the Social Security Administration and the EEOC agree that the receipt of Social Security disability benefits does not automatically bar ADA claims. In its Information Memorandum, the Social Security Administration points out that the definitions of disability under the Social Security Act and the ADA are not synonymous: "[T]he ADA and the disability provisions of the Social Security Act have different purposes, and have no direct application to one another." DISABILITIES ACT INFO. MEM. at 3; *see also* 20 CFR § 404.1504 ("A decision by any nongovernmental agency or any other governmental agency about whether you are disabled ... is based on its rules and is not [the Social Security Administration's] decision.... [A] determination made by another agency that you are disabled ... is not binding on us."). Taking the same position, the EEOC states in a recently issued Enforcement Guidance: "representations made in connection with an application for disability benefits ... are never an absolute bar to a finding that a person is a 'qualified individual with a disability' for purposes of the ADA." EEOC ENFORCEMENT GUIDANCE ON THE EFFECT OF REPRESENTATIONS MADE IN APPLICATIONS FOR BENEFITS ON THE DETERMINATION OF WHETHER A PERSON IS A "QUALIFIED INDIVIDUAL WITH A DISABILITY" UNDER THE AMERICANS WITH DISABILITIES ACT OF 1990 at 3 (Feb. 12, 1997). Explaining further, the Enforcement Guidance states:

> [B]ecause of the fundamental differences in the definitions used in the ADA and the terms used in disability benefits programs, an individual can meet the eligibility requirements for receipt of disability benefits and still be a "qualified individual with a disability" for ADA purposes. Thus, a person's representations that s/he is "totally disabled" or "unable to work" for purposes of disability benefits are never an absolute bar to an ADA claim.

*Id.* at i.

From the standards and procedures of the Social Security Administration and the EEOC, it is thus clear that Social Security disability determinations take no account of reasonable accommodation—the critical ADA issue. Awards of disability benefits, therefore, cannot bar ADA relief. The contrary view—that Social Security disability benefits preclude ADA relief—would force disabled individuals into an "untenable" choice between receiving immediate subsistence benefits under the Social Security Act or pursuing discrimination remedies. *Smith v. Dovenmuehle Mortgage, Inc.,* 859 F.Supp. 1138, 1142 (N.D.Ill.1994). Forcing such a choice would undermine the pro-employment and anti-discrimination purposes of the two statutes. *See, e.g.,* § 42 U.S.C. 422(c) (allowing Social Security benefits during nine-month trial work period); *id.* § 12101(b)(1) (naming provision of "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" as a purpose of the ADA); *id.* § 12112 (prohibiting discrimination in employment). Claimants choosing benefits would sacrifice an opportunity for reinstatement while simultaneously shielding their employers from liability for allegedly unlawful discrimination. Individuals choosing instead to seek ADA relief would, by doing so, forego their entitlement to Social Security disability benefits. Nothing in either statute requires disabled individuals to make this choice.

In holding that the receipt of disability benefits does not preclude subsequent ADA relief, we join three of our sister circuits. *See Robinson v. Neodata Servs., Inc.,* 94 F.3d 499, 502 n. 2 (8th Cir.1996) (noting that Social Security Administration determinations are "[a]t best ... evidence for the trial court to consider in making its own independent determination"); *Kennedy v. Applause, Inc.,* 90 F.3d 1477, 1480–82 (9th Cir.1996) (relying on entire evidentiary record, not just appellant's statements on state and Social Security benefit forms, to conclude that appellant failed to raise genuine issue of material fact); *D'Aprile v. Fleet Servs. Corp.,* 92 F.3d 1, 3–5 (1st Cir.1996) (holding, despite appellant's application for disability insurance, that genuine issue of material fact remained as to appellant's ability to work); *cf. Overton,* 977 F.2d at 1196 (observing in Rehabilitation Act case that Social Security Administration "determination of disability may

be relevant evidence of the severity of [the party's] handicap, but it can hardly be construed as a judgment that [the party] could not do his job"). Only the Third Circuit has reached a contrary conclusion, relying on the doctrine of judicial estoppel to hold that an individual's statement, made to the Social Security Administration, among others, that he was disabled and unable to work barred his subsequent ADA claim. *McNemar v. Disney Store, Inc.*, 91 F.3d 610 (3d Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 958, 136 L.Ed.2d 845 (1997). With all due respect, we think the Third Circuit's decision suffers from the same defect as the magistrate judge's: it disregards the fact that Social Security disability determinations take no account of reasonable accommodation.

The conclusion we reach today does not mean that claimants' statements in support of disability claims are never relevant in ADA suits. For example, ADA plaintiffs who in support of claims for disability benefits tell the Social Security Administration they cannot perform the essential functions of a job even with accommodation could well be barred from asserting, for ADA purposes, that accommodation would have allowed them to perform that same job. *See, e.g., Pyramid Sec. Ltd. v. IB Resolution, Inc.*, 924 F.2d 1114, 1123 (D.C.Cir.1991) (holding that parties' prior sworn statements must be given "controlling weight" at summary judgment unless "the shifting party can offer persuasive reasons for believing the supposed correction"). Here, however, the record contains no evidence of Swanks's position before the Social Security Administration; we know nothing about what he said in his application for Social Security disability benefits, what evidence he provided to support his claim, or what statements he or any of his witnesses made in the course of the proceedings.

WMATA argues that allowing Social Security disability beneficiaries to pursue ADA suits could produce double recoveries—back-pay awards covering the same period the beneficiary received disability benefits. At oral argument, however, Swanks and the Social Security Administration agreed that should Swanks prevail on his ADA claims against WMATA, any backpay award could be reduced to the extent necessary to avoid double recovery. *See, e.g., EEOC v. Wyoming Retirement Sys.*, 771 F.2d 1425, 1431 (10th Cir.1985) ("Deduction of collateral sources of income from a back pay award is a matter within trial court's discretion."); *Orzel v. City of Wauwatosa Fire Dept.*, 697 F.2d 743, 756 (7th Cir.1983) (noting that deduction of collateral source benefits is "normally a matter within the discretion of the district court"); *Naton v. Bank of Cal.*, 649 F.2d 691, 700 (9th Cir.1981) (holding district court has discretion to deduct unemployment compensation from Age Discrimination in Employment Act backpay award). *But see Thurman v. Yellow Freight Sys. Inc.*, 90 F.3d 1160, 1171 (6th Cir.) (holding that district court does not have discretion to set off collateral source income), *amended by* 97 F.3d 833 (6th Cir.1996); *Maxfield v. Sinclair Int'l*, 766 F.2d 788, 793–95 (3d Cir.1985) (holding that ADEA award should not be offset by Social Security benefits). Although the issue of remedy is not now before us, we think such set-offs may provide a way to prevent windfall recoveries while guaranteeing disabled persons the full protection of both Acts.

III

Reviewing the record ourselves, we find no other basis for sustaining the magistrate judge's grant of summary judgment. WMATA advanced two rationales for summary judgment—one directed at both Swanks's reasonable accommodation and discriminatory discharge claims, and the other directed at his discriminatory discharge claim alone. We have answered WMATA's first argument; Swanks's receipt of disability benefits does not, as a matter of law, prevent him from arguing that he is a "qualified individual with a disability" under the ADA. As to WMATA's second argument—that it fired Swanks for legitimate nondiscriminatory reasons—we see no basis for upsetting the magistrate judge's conclusion that genuine issues of material fact preclude summary judgment on this ground. *Swanks,* slip. op. at 3.

Nor finally can summary judgment rest on the magistrate judge's conclusion, set forth in

a footnote at the end of his opinion, that Swanks sought an accommodation not required by the ADA: " 'more sick leave' with or without pay[,] as he was sick 'more than half the time.' " *Swanks,* slip. op. at 7 n.1 (quoting Swanks Dep. at 28–29 (Aug. 21, 1995)). While Swanks testified that he *suffered* as a result of his sickness more than half of the time, separately stating he would need additional sick leave, he never testified that he had requested additional leave to accommodate his disability. Swanks Dep. at 28–29; *see Whitbeck,* 116 F.3d at 592 (holding that magistrate judge erred in concluding that unrequested accommodation was unreasonable under the Act). The reasonable accommodation Swanks sought was an opportunity for more exercise. Pl.'s Compl. at 3; Appellant's Br. at 13.

## IV

We reverse and remand for further proceedings consistent with this opinion.

*So ordered.*