**Thu McGILL, Plaintiff,**

v.

**Mildred O. CALLEAR, Acting President and CEO, Overseas Private Investment Corporation, Defendant.**

**Civil Action No. 95–1953(JR).**

United States District Court,
District of Columbia.

July 17, 1997.

Abbey G. Hairston, Baltimore, MD, for Plaintiff.

Morgan Day Hodgson, James B. Moorhead, Steptoe & Johnson, Washington, DC, for Defendant.

## *MEMORANDUM*

ROBERTSON, District Judge.

On April 11, 1997, a jury returned a verdict of $ 75,000 in favor of plaintiff Thu McGill against defendant Mildred Callear, acting president of Overseas Private Investment Corporation. The jury decided in plaintiff's favor on both of her claims—of disparate treatment and of failure to provide reasonable accommodation—brought under the Rehabilitation Act, as amended, 29 U.S.C. § 791 *et seq.* Before the Court is defendant's motion for judgment as a matter of law as to both claims.[1] For the reasons stated below, defendant's motion will be denied as to the disparate treatment claim and granted as to the reasonable accommodation claim.

---

1. Defendant's consent motion to withdraw its motion for a new trial was granted on May 23, 1997.

## 1. *Disparate Treatment*

■ Plaintiff was employed at Overseas Private Investment Corporation, a federal agency, in February 1987. She began working as a legal secretary for the Legal Affairs department in November 1991. In April 1994, plaintiff began to suffer symptoms of depression on the job. (She had been diagnosed with depression two and one-half years earlier). Her symptoms included decreased self-confidence, loss of concentration, suicidal thoughts, and crying bouts. Plaintiff's symptoms were triggered in part by, and were exacerbated by, the stress she experienced as a result of working under the supervision of Connie Downs, the new office manager who had been hired in January 1994. There was sufficient evidence for the jury to find that plaintiff's symptoms substantially limited her ability to perform a broad range of jobs. *See* 29 C.F.R. § 1630.2(j)(3)(i); *Pritchard v. Southern Company Servs.*, 92 F.3d 1130, 1134 (11th Cir.), *amended in part by* 102 F.3d 1118 (11th Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 2453, 138 L.Ed.2d 211 (1997).

■ Plaintiff adduced evidence that she was nevertheless qualified to perform the essential functions of her secretarial job during the relevant time period. She received "satisfactory" performance ratings covering May 1992–94, including a period of time during which she was assigned to three attorneys. After her arrival in January 1994, Ms. Downs created numerous memorandums and e-mails to document her every criticism of plaintiff's performance, but the evidence in the record, and particularly the testimony of Mr. Jenny, was sufficient for a reasonable juror to conclude that Ms. Downs' criticisms were minor and that plaintiff met the necessary qualifications.

■ The *McDonnell–Douglas* framework is applicable to Rehabilitation Act cases where, as here, the employer claims to have taken a challenged action for reasons unrelated to the plaintiff's disability. *Barth v. Gelb*, 2 F.3d 1180, 1186 (D.C.Cir.1993), *cert.*

denied, 511 U.S. 1030, 114 S.Ct. 1538, 128 L.Ed.2d 190 (1994). Here, plaintiff made out a prima facie case of disparate treatment. There was evidence that plaintiff was required to provide medical documentation for all sick leave, but that OPIC's leave policy did not require documentation for periods of less than three days and that other similarly situated secretaries were not required to provide such documentation. There was evidence that, after plaintiff returned late from lunch-time aerobics classes, she was required to report for work early and to check in with Ms. Downs three times a day in order to continue the aerobics program, but that other similarly situated secretaries were not similarly restricted.[2] And there was sufficient evidence in the record for the jury to conclude that OPIC was aware of plaintiff's disability.

OPIC's evidence of legitimate, nondiscriminatory reasons for plaintiff's treatment was that, unlike any other secretary in the office, plaintiff abused her sick leave, and OPIC questioned whether her sick leave was being used for the purposes for which sick leave was intended; that no other secretary took as long as plaintiff to return from the aerobics class; and that, in general, any discrepancy in treatment was a direct result of plaintiff's performance problems.

■ The verdict reflects the jury's rejection of OPIC's evidence (and, perhaps, its acceptance of plaintiff's closing argument that Ms. Downs' continual criticism of plaintiff's performance was "picky, picky, picky"). Rejection by the finder of fact of proffered nondiscriminatory reasons for demonstrated disparate treatment permits a finding of discrimination on the basis of disability. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Barbour v. Merrill*, 48 F.3d 1270, 1277 (D.C.Cir.1995), *cert. dismissed*, —— U.S. ——, 116 S.Ct. 1037, 134 L.Ed.2d 113 (1996); *see also Barth v. Gelb*, 2 F.3d 1180, 1186 (D.C.Cir.1993)

---

**2.** Plaintiff also testified about training opportunities but the record does not reflect a colorable claim of disparate treatment on that basis.

## 2. *Reasonable Accommodation*

■ OPIC's awareness of plaintiff's disability did not trigger its statutory duty to accommodate, in the absence of proof that OPIC was aware, or should have been aware, of the limitations the disability imposed upon plaintiff's ability to work. *See Taylor v. Principal Financial Group, Inc.,* 93 F.3d 155 (5th Cir.), *cert. denied,* — U.S. —, 117 S.Ct. 586, 136 L.Ed.2d 515 (1996); *Gallagher v. Catto,* 778 F.Supp. 570, 578 (D.D.C.1991), *aff'd mem.,* 988 F.2d 1280 (D.C.Cir.1993). OPIC's duty to accommodate any limitations imposed by plaintiff's depression thus did not arise until plaintiff asked for an accommodation, which she did not do until December 1994 at the earliest.

■ When plaintiff did request an accommodation, OPIC was required to engage in an interactive process to determine appropriate accommodations. 29 C.F.R. Pt. 1630, App. As part of that process, OPIC was entitled to request medical documentation of the need for an accommodation, if the need, and the appropriate accommodation, were neither obvious nor specified in the request. *Id.; see also Carter v. Watkins,* 57 Empl. Prac. Dec. (CCH) ¶ 41,217, 1991 WL 294560 (D.D.C. Dec. 23, 1991).

OPIC sent a notice of proposed removal to plaintiff on January 30, 1995. The letter recited criticisms of plaintiff's performance, but it also included a request for more specific information regarding plaintiff's diagnosis and prognosis and for the nature of the accommodation she was requesting. Plaintiff did not respond to OPIC's inquiry of January 30, 1995, nor to subsequent letters (both to her and to her lawyer) requesting the same kind of information. On March 16, 1995, plaintiff was informed that her sick leave would soon expire, and that she must submit medical documentation if she wished to be placed on a leave of absence. Again, there was no response. On April 25, 1995, plaintiff was terminated.

■ Plaintiff's failure to respond to OPIC's inquiries or otherwise to participate in the process of identifying appropriate accommodation is fatal to her reasonable accommodation claim. *See Hunt–Golliday v. Metropolitan Water Reclamation District of Greater Chicago,* 104 F.3d 1004, 1012 (7th Cir.1997). Plaintiff's mere assertion that a response would have been "futile" will not avoid the consequence of her failure to respond. There is no evidence of bad faith on OPIC's part. *Id.*

■ Post-trial review of the record makes it clear, moreover, that there was no evidence upon which a reasonable juror could have found that, at the time of her termination, plaintiff was able to perform her job with reasonable accommodation. The evidence, in fact, all pointed the other way. Plaintiff filed a sworn social security application (dated June 25, 1996) reciting that as of January 5, 1995, she was "unable to work" because of her "disabling condition." Plaintiff's doctor testified that, by January 1995, she was suffering from severe depression requiring indefinite sick leave; that no date of recovery could be estimated; and that there was nothing OPIC could have done in particular to enable her to work. Plaintiff's statements to the Social Security Administration, taken together with the medical testimony she adduced, bar her assertion for ADA purposes that accommodation would have allowed her to perform her job. *See Swanks v. WMATA,* 116 F.3d 582, 586–87 (D.C.Cir.1997).[3]

■ Entry of judgment for the defendant on one of plaintiff's two claims requires consideration of the impact of that ruling on the $75,000 damages award. The verdict form had only one space for entering an award, and it did not provide a method for allocating any award between the disparate treatment claim and the reasonable accommodation claim. There was no objection to that verdict form. Indeed, defendant's proposed special verdict form also provided only one space for the entry of a damages award, if the jury found for plaintiff on her disparate treatment claim "and/or" her reasonable ac-

---

**3.** By order dated July 10, 1997, defendant was denied leave to file a supplemental memorandum on the *Swanks* case. Plaintiff's subsequently filed response to that unfiled memorandum was not considered by the Court.

commodation claim. Accordingly, the jury's award will not be disturbed.[4]

An appropriate order accompanies this memorandum.

## ORDER

Upon consideration of defendant's motion for judgment as a matter of law, plaintiff's opposition thereto, and the entire record, for the reasons stated in the accompanying memorandum, it is this 17th day of July, 1997,

**ORDERED** that defendant's motion for judgment as a matter of law will be *denied* as to the disparate treatment claim and *granted* as to the reasonable accommodation claim. It is

**FURTHER ORDERED** that judgment is hereby entered for defendant on the reasonable accommodation claim.

---

4. There also remains the question of what equitable relief plaintiff is entitled to. There is no motion currently before the Court. *See* Tr. 132 (April 11, 1997). Without deciding the issue, it should be noted that any claim for front pay will be impacted by the Court's ruling that plaintiff's social security application and medical evidence bar her reasonable accommodation claim.