David J. PENA

v.

### HOUSTON LIGHTING & POWER COMPANY.

No. CIV. A. G–97–040.

United States District Court, S.D. Texas, Galveston Division.

Sept. 24, 1997.

---

Michael D. Seale, Law Offices of O. F. Jones III, Victoria, TX, for plaintiff.

L. Chapman Smith, Mark Gregory Artlip, Baker and Botts, Houston, TX, for defendant.

### *ORDER GRANTING SUMMARY JUDGMENT*

KENT, District Judge.

Plaintiff David J. Pena brought this action alleging violations of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*, and the Texas Commission on Human Rights Act (TCHRA), TEX. LAB. CODE ANN. § 21.051, *et seq.* Now before the Court is Defendant HL & P's Motion for Summary Judgment, dated June 16, 1997. For the reasons set forth below, the Motion is **GRANTED**.

## I. FACTUAL BACKGROUND

Plaintiff originally brought this case in the 23rd Judicial District Court of Matagorda County, Texas. Defendant HL & P timely removed it to this Court pursuant to 28 U.S.C. § 1331.

The material facts of this case are undisputed. Pena began work for HL & P as a Mechanic Apprentice at HL & P's South Texas Project in Matagorda County, Texas in 1984. He was transferred to the position of Tool Control Technician in 1986, until February of 1995 when his position was reclassified as a Material Handler pursuant to the terms of a new collective bargaining agreement (CBA) between HL & P and the International Brotherhood of Electrical Workers. Pena's new position as Material Handler comprised essentially the same duties and responsibilities as his previous position of Tool Control Technician.

In July of 1992, Pena had an on-the-job accident and sustained serious injuries to his neck, back, and arm. Pena was permanently disabled from the accident and was placed on medical restrictions by his doctor requiring him to be off work periodically. There is some dispute as to whether HL & P accommodated Pena in his work responsibilities from the time of the accident until October of 1994 or whether they insisted that he take a leave of absence. However, it is undisputed that Pena's employment was not terminated at that time and that the physical restrictions he was under were imposed by his physician. In May of 1995, Pena submitted a physician's statement to HL & P permanently restricting Pena from lifting more than 25 pounds. According to Plaintiff's Original Petition, Pena was either involuntarily terminated or involuntarily placed on long-term disability status on July 26, 1995. HL & P argues in its Motion for Summary Judgment that Pena's employment was not terminated and would not be terminated unless he had not recovered and was not working rehabilitative work for HL & P by August 9, 1997. Plaintiff disputes this contention in his Response to Defendant's Motion for Summary Judgment, and contends instead that his employment with HL & P was indeed terminated on July 26, 1995.

It is undisputed, however, that Pena applied for long-term disability benefits pursuant to the Houston Industries Incorporated Long Term Disability Plan (LTD Plan) on September 27, 1994. Pena was informed on August 29, 1995 that his claim for LTD benefits had been approved effective August 9, 1995. Since that time, Pena has received and continues to receive a gross monthly LTD benefit of approximately $1,782.55. Pena has never asked to be removed from his long-term disability status, nor has he returned any of the benefits which he has received under the LTD Plan to date.

As part of his application for LTD benefits, Pena was required to fill out a Disability Report to the United States Social Security Administration (SSA), in which he stated that his condition kept him from working because of "continual pain—can not be eliminated—under physician's care—restriction of 0 weight lifting, hampers all job duties." The LTD Plan to which Pena applied provided LTD benefits for "Totally Disabled" claimants. Under the Plan, "Total Disability" or "Totally Disabled" is defined as:

a) during the Qualifying Period and the first 24 months immediately following the Qualifying Period, the Participant is wholly and continually disabled by sickness or accidental bodily injury which prevents him/her from performing, with or without reasonable accommodations, the essential functions of his/her normal occupation for an Employer, or

b) after such Qualifying Period and the following 24 months, the Participant is unable to perform the essential functions of any occupation for which he/she is reasonably suited by education, training, or experience....

In addition to the LTD Plan application, Pena also filled out a "Notice of Disability" for mortgage disability benefits on August 11, 1995 to Minnesota Mutual. In that application, he placed an "X" in the box marked "Totally Disabled." Furthermore, in response to the question "Is patient now totally disabled?" his physician marked an "X" next to the box marked "Yes".

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c). The Court must accept the evidence of the nonmoving party and draw all justifiable inferences in favor of that party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); see FED. R.CIV.P. 56(c). Once this burden is met, the burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita*, 475 U.S. at 585–87, 106 S.Ct. at 1355–56; *Wise v. E.I. DuPont De Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995). The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts," but instead must come forward with specific facts to show that there is a genuine issue for trial. *Matsushita*, 475 U.S. at 586–87, 106 S.Ct. at 1355–56 (citing FED.R.CIV. P. 56(e)). The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *Anderson*, 477 U.S. at 247–48, 106 S.Ct. at 2510. If the evidence is such that a reasonable fact-finder could find in favor of the nonmoving party, summary judgment should not be granted. *Id.; see also Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356.

## III. ANALYSIS

Plaintiff seeks to impose liability on Defendant for unlawful discrimination in employment pursuant to the ADA and the TCHRA. The TCHRA seeks to promote the policies of federal civil rights laws, specifically Title VII, 42 U.S.C. § 2000e et seq., and the ADA. TEX. LAB. CODE ANN. § 21.001 (Vernon 1996). For this reason, and because Texas has little case law interpreting the TCHRA, courts must look to analogous federal law when resolving disputes brought under the Act. *Austin State Hosp. v. Kitchen*, 903 S.W.2d 83, 87–88 (Tex.App.—Austin 1995, no writ). Federal law regarding disability discrimination by employers is found in the ADA, and thus the interpretation of those provisions should serve to interpret the analogous provisions of the TCHRA as well. *See id.* at 88.

Under the ADA, an employer is prohibited from discriminating against a "qualified individual with a disability because of the disability." 42 U.S.C. § 12112(a) (1995). To establish a prima facie case under the ADA, a plaintiff must show that he or she is a "qualified individual with a disability." *See Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir.1995). The term "qualified individual with a disability" is defined as "an individual with a disability who, with or without reasonable accommodation, *can perform the essential functions*" of her job. 42 U.S.C. § 12111(8) (1995) (emphasis added). Likewise, under the TCHRA, employers can only be held liable for discrimination "because of or on the basis of a physical or mental condition that does not impair an individual's ability to reasonably perform a job." TEX. LAB. CODE ANN. § 21.105 (Vernon 1996). In discrimination cases under both the ADA and the TCHRA, the plaintiff bears the burden of showing he is "otherwise qualified" or can "reasonably perform a job." He can show this in either of two ways: (1) by proving that he can perform all essential job functions without modifications or accommodations, or (2) that some reasonable accommodation by the employer would enable him to perform the job. *See Austin State Hosp.*, 903 S.W.2d at 91.

▇ The doctrine of judicial estoppel prevents a party from asserting in a legal proceeding a position that is contrary to a position taken in the same or some earlier proceeding. *Ergo Science, Inc. v. Martin,* 73 F.3d 595, 598 (5th Cir.1996). Judicial estoppel is designed to protect the integrity of the judicial process by preventing litigants from "playing fast and loose" with the courts and from "deliberately changing positions based upon the exigencies of the moment." *Id.* The doctrine is not limited to proceedings before courts of law; it also extends to quasi-judicial administrative proceedings, including the application process for social security benefits. *See Muellner v. Mars, Inc.,* 714 F.Supp. 351, 358 (N.D.Ill.1989); *see also Harris v. Marathon Oil Co.,* 948 F.Supp. 27, 28 (W.D.Tex. 1996); *aff'd,* 108 F.3d 332 (5th Cir.1997).

▇ Judicial estoppel bars the Plaintiff in this case from asserting that he is a "qualified individual with a disability" under the ADA or that he can "reasonably perform" his job under the TCHRA in light of the representations he made that he was "totally disabled" in his application to the SSA accompanying his LTD Plan application and in his mortgage disability benefits application. The Fifth Circuit has held very recently that "the application for or the receipt of social security disability benefits creates a rebuttable presumption that the claimant or recipient of such benefits is judicially estopped from asserting that he is a qualified individual with a disability." ' *Cleveland v. Policy Management Systems Corp.,* 120 F.3d 513, 518 (5th Cir.1997). This presumption leaves open the possibility that someone receiving social security benefits may nevertheless present "credible, admissible evidence ... sufficient to show that, even though he may be disabled for purposes of social security, he is otherwise qualified to perform the essential functions of his job with a reasonable accommodation." *Id.* at 518. A plaintiff may rebut the presumption by showing that the two apparently mutually exclusive positions are actually consistent with each other. *Id.* at 518. Such circumstances, however, will be "limited and highly unusual." *Id.* In *Cleveland,* the plaintiff failed to rebut the presumption and was consequently estopped from asserting her ADA claim because she

had "continuously and unequivocally represented to the SSA that she is *totally disabled* and completely unable to work." *Id.* at 518 (emphasis added)

Another case, cited by Plaintiff in this case, addresses this issue and sheds some light on when a person claiming social security benefits may nevertheless pursue an ADA claim. In *Swanks v. Washington Metro. Area Transit Auth.,* 116 F.3d 582 (D.C.Cir. 1997), the court held that a plaintiff could assert dual qualification for purposes of both social security and the ADA. The Swanks court found that the SSA's definition of disability did not take into account the possibility that the employee may be able to perform the essential functions of his job with reasonable accommodation, and thus it was not inconsistent for the plaintiff to assert that, with reasonable accommodation, he could perform the essential functions of his job. *Swanks,* 116 F.3d at 587.

The case at bar, however, is materially different from *Swanks.* The LTD Plan in this case, under which Plaintiff has received benefits since 1995, defines someone as "Totally Disabled" if he is "wholly and continually disabled by sickness or accidental bodily injury which prevents him/her from performing, *with or without reasonable accommodations,* the essential functions of his/her normal occupation for an Employer." The Plaintiff was informed of this definition when he applied for LTD benefits and again in a letter when HL & P informed him that he was eligible under the LTD Plan. Plaintiff applied for, accepted, and continues to receive LTD benefits based on his own representation and understanding that he is totally disabled and unable to perform the essential functions of his job, *with or without accommodation.* Thus *Swanks* is completely inapplicable to this case.

On the other hand, the facts are remarkably similar to those in *Cleveland,* where the plaintiff was estopped from asserting an ADA claim because of her representations to the SSA that she was totally disabled. It would be hard to imagine any set of circumstances where a claim of total disability would be consistent with a claim of ability to

perform the essential functions of one's job. Plaintiff here has pointed to no evidence which would rebut the *Cleveland* presumption that he is judicially estopped from asserting his ADA claim.

Plaintiff's only argument in attempting to harmonize his contradictory positions is that he applied for LTD benefits only when HL & P informed him that he would be eligible, and that his "own perceptions of his disabling status and work capabilities grew heavily out of Defendant's perceptions of his condition." This claim does not even merit analysis. It is clearly not the Court's role to monitor the psychological nuances that exist between employee and employer and guard against any alleged improper influences by the latter. Mr. Pena is apparently a mentally capable and functional adult who consciously applied for LTD benefits of his own volition, representing in the process that he was *totally* disabled. Moreover, he applied for LTD benefits not only with HL & P, but also with his own insurance company, Minnesota Mutual, again representing that he was totally disabled. He was approved for and continues to receive LTD benefits with the knowledge that he is doing so on the basis that he is totally disabled. To allow Plaintiff to now turn around and claim that he was unfairly discriminated against because he *is not* totally disabled but can perform the essential functions of his job would countenance a fraud either on this Court or on the Social Security Administration and Plaintiff's own insurance company. *See Harris v. Marathon Oil Co.*, 948 F.Supp. 27, 29 (W.D.Tex. 1996), *aff'd*, 108 F.3d 332 (5th Cir.1997) (plaintiff who asserted he was totally disabled and who was receiving long term disability benefits was estopped from bringing an ADA claim). To allow Plaintiff to assert such contradictory and wholly inconsistent positions would be advancing "a factual im-

possibility and a legal contradiction." *Cleveland*, 120 F.3d at 518.

■ Plaintiff also argues that his medical condition and physical abilities changed beginning on October 11, 1994 when his doctors lifted most of his previous medical restrictions. He claims that this new report on his health rendered his LTD Plan application obsolete. However, nowhere does Plaintiff assert that he ever withdrew his application or refused a payment under the LTD Plan. It is irrelevant that Plaintiff now asserts that he could in fact have performed his job, with accommodation, but that HL & P would not allow him to. He continuously and knowingly represented to HL & P that he was totally disabled and entitled to LTD benefits. Plaintiff's continued acceptance of LTD benefits is a continuing reaffirmation of the representations he made to the SSA in the LTD Plan application. Consequently, Plaintiff is estopped from advancing any argument that he was able to perform the essential functions of his job. Therefore, Plaintiff has failed to meet his burden of proving that he is "otherwise qualified" under the ADA and/or that he can "reasonably perform a job" under the TCHRA.[1] Accordingly, the Defendant's Motion for Summary Judgment is hereby **GRANTED**, and the Plaintiff's claims are **DISMISSED WITH PREJUDICE.**

Defendant also advances in its Motion for Summary Judgment that Pena was required to exhaust the grievance and arbitration procedures of the collective bargaining agreement (CBA) governing his employment with HL & P before bringing his ADA claim in a judicial proceeding. Because the Court has decided that summary judgment should be granted on the ground of judicial estoppel, the mandatory exhaustion argument need not be addressed. Furthermore, the Court notes that the Fifth Circuit has yet to ad-

---

1. The Court notes that Plaintiff, in his Response to the Motion for Summary Judgment, makes an informal request for additional time to conduct discovery and supplement his Response. Insofar as this is a proper motion under FED. R. CIV. P. 56(f), the Court denies the request. This case has been on file in this Court for almost nine months, and the Plaintiff has accordingly had ample time in which to conduct any discovery actions. That the Plaintiff has been dilatory in conducting dis-

covery in this case is not the responsibility of the Court. The Court is always available and willing to help with any discovery problems experienced by either party, but has not received any such requests from the Plaintiff to date. The Plaintiff cannot now assert generally that ne needs more time to supplement his Response without asserting good reason for needing more time and demonstrating how the additional discovery will create a genuine issue of material fact.

dress the specific issue of whether exhaustion of grievance procedures under a CBA is a prerequisite to pursuing an ADA claim. *See Hill v. American Nat'l Can Co./Foster Forbes Glass Div.*, 952 F.Supp. 398, 404 (N.D.Tex.1996) (ruling, in a case of first impression, that failure to exhaust grievance procedures in the context of a CBA does not preclude an ADA action); *but cf. Hirras v. National R.R. Passenger Corp.*, 44 F.3d 278, 282 (5th Cir.1995) (holding that state-law claims are only preempted by mandatory CBA grievance procedures if they rely on interpretation of the CBA's provisions). Because it is not necessary to the disposition of this case, the Court declines to decide at this time whether the grievance procedure of the CBA at issue precludes Plaintiff's ADA claim.

## III. CONCLUSION

For the reasons set forth above, Defendant HL & P's Motion for Summary Judgment is hereby **GRANTED** and all claims are **DISMISSED WITH PREJUDICE**. All parties are **ORDERED** to bear their own costs and attorney's fees incurred herein to date.

**IT IS SO ORDERED.**

### *FINAL JUDGMENT*

For the reasons set forth in the Order issued this date, Defendant HL & P's Motion for Summary Judgment is hereby **GRANTED** and all claims are **DISMISSED WITH PREJUDICE**. All parties are **ORDERED** to bear their own costs and attorney's fees incurred herein to date.

**THIS IS A FINAL JUDGMENT.**

**IT IS SO ORDERED.**