BRISCOE, Circuit Judge,
concurring and dissenting:
I concur in the majority’s conclusion that the district court correctly rejected Smith’s ADEA and state law retaliatory discharge claims. After some additional clarification, I also agree with the majority’s conclusion that the district court erred in concluding Smith was judicially estopped from bringing his ADA claim because he filed a claim for social security disability. However, I respectfully dissent from the majority’s conclusion that
under the ADA, when a plaintiff is not qualified, even with reasonable accommodation, for the job wMch he currently holds ..., the employing entity has no obligation to consider reassigmng him to another position. Under the current EEOC gmde-lines, the employer’s obligation to consider reassignment arises only if the employer can accommodate the employee in his current position, but would experience undue hardship in doing so.
T would conclude the ADA requires an employer to consider reassignment to a vacant position when the employee cannot perform Ms current job at all or can oMy perform it with accommodation that poses undue hardship to the employer. There is no statutory language, legislative Mstory, case law, or ad-mimstrative interpretation limiting reassignment to employees who can perform their current jobs only with accommodations that cause the employer undue hardsMp.
The majority’s conclusion is contrary to the statutory language of the ADA The ADA proMbits discrimination in employment against qualified individuals with disabilities. Title 42 U.S.C. § 12112(a) provides no employer covered by the Act “shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job trainmg, and other terms, conditions, and privileges of employment.” The ADA defines discrimination to include “not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified mdividual with a disability who is an applicant or employee,” unless the employer can demonstrate the accommodation would impose an undue hardsMp on the operation of its business. 42 U.S.C. § 12112(b)(5)(A). See Lowe v. Angelo’s Italian Foods, Inc., 87 F.3d 1170, 1174 (10th Cir.1996). Title 42 U.S.C. § 12111(9)(B) provides examples of reasonable accommodation:
The term “reasonable accommodation” may include—
(B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, framing materials' or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.
*1314 (Emphasis added.) Title 42 U.S.C. § 12111(8) defines a qualified individual with a disability as one who, with or without reasonable accommodation, can perform the essential functions of “the employment position that such individual holds or desires.”[1]
The phrase “the employment position that such individual ... desires” is broad enough to include vacant positions available for reassignment to current employees as well as positions sought by applicants. Thus, under the plain language of the ADA, an employee who is unable to perform the essential functions of the job he currently holds with or without reasonable accommodation, but who is able to perform the essential functions of a vacant position with or without reasonable accommodation, is a qualified individual with a disability. See Daugherty v. City of El Paso, 56 F.3d 695, 698-99 (5th Cir.1995). In Daugherty, the city argued because plaintiff could no longer perform his current job, he was not a qualified individual with a disability and the city had no duty to accommodate him by reassignment to a vacant position. The court rejected the city’s argument:
Contrary to the city’s position, we do not read the statutory reference to employment an individual “desires” as applicable only to job applicants. Instead, we read this language as extending to individuals like Daugherty who are already employed and then become disabled, since the broad prohibition against discrimination found in 42 U.S.C. § 12112(a) extends not only to hiring and job application procedures, but to advancement, discharge of employees, “and other terms, conditions, and privileges of employment.”
56 F.3d at 699.[2]
The majority notes the EEOC’s interpretive guidelines are not controlling authority, see Mentor Savings Bank v. Vinson, 477 U.S. 57, 65, 106 S.Ct. 2399, 2404-05, 91 L.Ed.2d 49 (1986), but treats one isolated sentence in the guidelines as determinative of this reassignment issue: “In general, reassignment should be considered only when accommodation within the individual’s current position would pose an undue hardship [to the employer].” 29 C.F.R. § 1630.2(o) (App.). However, the guidelines go on to state: “An employer may reassign an individual to a lower graded position if there are no accommodations that would enable the employee to remain in the current position and there are no vacant equivalent positions for which the individual is qualified with or without reasonable accommodation.” Id. It is clear from this second statement that the EEOC also regards reassignment as an option if the employee cannot perform his current job at all.
The majority reads this language to mean employers may voluntarily reassign employees who are unable to perform their jobs because of disability. The second statement says nothing about what employers may voluntarily do, but rather it limits what employers may do; it permits an employer to reassign an employee to a lower-graded position only if there are no accommodations that would enable the employee to remain in his current position and there are no vacant equivalent positions for which the employee is qualified. If such vacant equivalent positions exist, the employer cannot reassign the employee to a lower-graded position but must' reassign the employee to a vacant equivalent position.
Read together, and in light of the statutory language and purpose of the ADA, the guidelines’ discussion of the ADA’s express statutory reassignment provision shows the EEOC interprets the ADA as requiring an employer to consider reassignment when the employee cannot perform his current job at all or can only perform it with accommodation that poses undue hardship to the employer. This is the interpretation in the EEOC’s own Title I Technical Assistance Manual (1992). Section 1-3.10(5) provides:
Reassignment to a Vacant Position
In general, the accommodation of reassignment should be considered only when *1315 an accommodation is not possible in an employee’s present job, or when an accommodation in the employee’s present job would cause an undue hardship. Reassignment also may be a reasonable accommodation if both employer and employee agree that this is more appropriate than accommodation in the present job.
Reassignment may be an appropriate accommodation when an employee becomes disabled, when a disability becomes more severe, or when changes or technological developments in equipment affect the job performance of an employee with a disability. If there is no accommodation that will enable the person to perform the present job, or if it would be an undue hardship for the employer to provide such accommodation, reassignment should be considered.
Reassignment should be made to a position equivalent to the one presently held in terms of pay and other job status, if the individual is qualified for the position and if such á position is vacant or will be vacant within a reasonable amount of time____
An employer may reassign an individual to a lower graded position if there are no accommodations that would enable the employee to remain in the current position and there are no pbsitions vacant or soon to be vacant for which the employee is qualified (with or without an accommodation).[3]
The interpretation in Daugherty and in the Technical Assistance Manual is consistent with the statutory language and legislative history of the ADA The legislative history of the ADA indicates Congress intended reassignment to be an option whenever a disability renders an employee unable to perform his current job.
Reasonable accommodation may also include reassignment to a vacant position. If an employee, because of his disability, can no longer perform the essential functions of the job that she or he has held, a transfer to another vacant job for which the person is qualified may prevent the employee from being out of work and the employer from losing a valuable worker. Efforts should be made, however, to accommodate an employee in the position that he or she was hired to fill before reassignment is considered. Thé Committee also wishes to make clear the reassignment need only be to a vacant position— “bumping” another employee out of a position to create a vacancy is not required.
H.R.Rep. No. 485(11), at 63 (1990) (emphasis added). See also S.Rep. No. 116 at 6 (1989).
This interpretation is consistent with the structure of the ADA. There is no basis for distinguishing between an employee who cannot perform his current job at all, even with reasonable accommodation, and one who can perform his current job only with accommodation that poses undue hardship to the employer. Under the ADA, the employer is not obligated to accommodate either employee in his current position. However, reassignment to a vacant position is one of the many potential reasonable accommodations expressly listed in the statute.
This interpretation is also consistent with the expressed intent of Congress that the same standards should apply in determining whether the employment provisions of the Rehabilitation Act and the ADA have been violated. See 42 U.S.C. §§ 12117(b) and 12201(a). Before the 1992 amendments, the Rehabilitation Act, unlike the ADA, did not expressly provide that reasonable accommodation may include reassignment to a vacant position. The 1992 amendments incorporated the ADA standards on employment discrimination. See 29 U.S.C. §§ 791(g) and 794(d). The regulations implementing the amendments expressly provide for reassignment when an employee becomes unable to perform the essential functions of his or her *1316 job even with reasonable accommodation. See 29 C.F.R. § 1614.203(g); see also Woodman v. Runyon, 132 F.3d 1330, 1338-39 (10th Cir.1997). That is the ADA standard.
In White v. York Int’l Corp., 45- F.3d 357, 361-62 (10th Cir.1995), this court recognized reasonable accommodation under the ADA, but did not limit its applicability to situations where the employee could perform his current job only with accommodation that imposes undue hardship on the employer. In White, the employee was unable to perform his current or former jobs at all, but the court did not reject reassignment for that reason. Instead, the court rejected reassignment as a reasonable accommodation because the employer established there were no vacant equivalent positions the employee could perform. See also Milton v. Scrivner, Inc., 53 F.3d 1118, 1124-25 (10th Cir.1995) (plaintiffs unable to perform essential functions of current jobs failed to establish transfer to other positions was reasonable accommodation because they failed to show equivalent jobs were vacant and because they were not entitled to transfer under collective bargaining agreement).
As in White, we should look first to whether Smith can perform the essential functions of the job he held when he became disabled, with or without reasonable accommodation. If he cannot, we should then look to possible reassignment to another position and whether he could perform the essential functions of that position with or without reasonable accommodation.
Moreover, as argued by Smith, some of the authority relied on by the majority is suspect. In Myers v. Hose, 50 F.3d 278, 284 (4th Cir.1995), an ADA case, the court stated: “This circuit has made it clear ... that the duty of reasonable accommodation does not encompass a responsibility to provide a disabled employee with alternative employment when the employee is unable to meet the demands of his present position.” The Myers court cited Guillot v. Garrett, 970 F.2d 1320, 1326 (4th Cir.1992), a Rehabilitation Act case which held reasonable accommodation under the pre-1992 version of the Act did not include reassignment to a vacant position. In Myers, the court appeared simply to follow Guillot without considering the statutory language of the ADA and its differences with the language of the pre-1992 Act. See Gile v. United Airlines, Inc., 95 F.3d 492, 498 (7th Cir.1996). However, in Williams v. Channel Master Satellite Systems, Inc., 101 F.3d 346, 350 n. 4 (4th Cir. 1996), cert. denied, — U.S. --, 117 S.Ct. 1844, 137 L.Ed.2d 1048 (1997), the court explained Myers did not hold that reassignment to a vacant position can never be a reasonable accommodation under the ADA, noting such a conclusion would be contrary to congressional direction. To the extent Myers stands for the proposition that reassignment cannot be a reasonable accommodation under the ADA, it should not be followed in this circuit.
In Foreman v. Babcock & Wilcox Co., 117 F.3d 800 (5th Cir.1997), the court concluded plaintiff was not a qualified individual under the ADA with respect to his current job, but nonetheless went on to consider whether reassignment could reasonably accommodate him. The court concluded reassignment of a worker'who could not perform his old job was not a reasonable accommodation because it would violate other workers’ rights under a collective bargaining agreement and because the worker failed to show any of the requested positions were vacant or that he was otherwise qualified for them. 117 F.3d at 810.
We have found no other court that has recognized reassignment as a reasonable accommodation and then adopted the limitation on reassignment adopted by the majority. See, e.g., Gile, 95 F.3d 492; Benson v. Northwest Airlines, Inc., 62 F.3d 1108, 1114-15 (8th Cir.1995); Haysman v. Food Lion, Inc., 893 F.Supp. 1092, 1103 (S.D.Ga.1995); see also, Aka v. Washington Hospital Center, 116 F.3d 876, 890, vacated and rehearing en banc granted 124 F.3d 1302 (D.C.Cir.1997).
Contrary to the majority’s suggestion, requiring employers to accommodate disabled employees by reassignment to vacant positions does not constitute affirmative action beyond the congressional intent of the ADA. The majority relies on Southeastern Community College v. Davis, 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979), where the Court held the Rehabilitation Act does not require employers to take affirmative action in favor *1317 of disabled employees that would fundamentally alter employers’ programs. However, in Alexander v. Choate, 469 U.S. 287, 300 n. 20, 105 S.Ct. 712, 720 n. 20, 83 L.Ed.2d 661 (1985), the Court distinguished between affirmative action that would require fundamental changes in a recipient’s program and an employer’s affirmative obligation under the Act to provide changes that would be reasonable accommodations. In School Board of Nassau County v. Arline, 480 U.S. 273, 289 n. 19, 107 S.Ct. 1123, 1131 n. 19, 94 L.Ed.2d 307 (1987), another Rehabilitation Act case, the Court explained: “Employers have an affirmative obligation to make a reasonable accommodation for a handicapped employee.” Under the Act in effect at that time, employers were “not required to find another job for an employee who is not qualified for the job he or she was doing,” but could not “deny an employee alternative employment opportunities reasonably available under the employer’s existing policies.” Id.
This case arises under the ADA, not the pre-1992 Rehabilitation Act. The ADA expressly prohibits discrimination against a qualified employee with a disability and defines discrimination to include “not making reasonable accommodations to the known physical or mental limitations” of the employee unless the employer can demonstrate the accommodation would impose an undue hardship. 42 U.S.C. § 12112(b)(5)(A). Unlike the pre-1992 Rehabilitation Act, the ADA expressly provides reasonable accommodation includes reassignment to a vacant-position. Under the express terms of the ADA, failure to offer an employee whose disability renders him unable to perform his current job reassignment to a vacant position he is qualified to perform is prohibited discrimination. Holding an employer liable for that failure is not affirmative action beyond what Congress intended, but merely enforcement of the express statutory prohibition against discrimination by failure to make reasonable accommodation.
Requiring employers to reassign disabled employees who can no longer perform their old jobs to vacant positions they can perform is not preferential treatment beyond the congressional intent of the ADA. In Daugherty, the city manager testified that reassigning plaintiff, who was a part-time worker, to a full-time position for which a full-time worker had priority under the city charter would likely have led to a lawsuit by the full-time employee. The court’s statement that the ADA does not require that disabled persons be given priority in reassignment over those who are not disabled must be read in this context. Daugherty holds there is no duty to accommodate disabled employees by reassigning them to positions to which other employees have a prior claim. Under those circumstances, reassignment would allow a disabled employee to “bump” a worker with a prior claim to the position, which is contrary to the intent of Congress. Daugherty is inapplicable where no other employee has a prior claim to a position to which a disabled employee seeks reassignment.
Here, there is no city charter giving other employees priority to positions and there is no evidence of a collective bargaining agreement. Reassigning Smith to a vacant position would not give him priority over any other employee who is not disabled.
I agree with the majority that Smith is not estopped from bringing his ADA claim. However, because the employer had the duty to provide reasonable accommodation by reassigning Smith to a vacant position for which he was qualified, it is necessary to decide the effect of Smith’s statements in support of his social security disability claim. Here, Smith’s representation that he was “totally disabled and unable to work” does not by itself justify summary judgment for the employer on the ground that Smith was not qualified for any of the vacant positions he identified.
Total disability within the meaning of the Social Security Act is not inconsistent with being qualified under the ADA for a job with one employer that could be specifically tailored for the employee through reasonable accommodation. A person is disabled when he is not qualified for jobs that exist in significant numbers in the national economy. 42 U.S.C. § 423(d). Reasonable accommodation is not taken into account in determining social security disability. Moreover, the Act permits persons to receive disability benefits while engaged in a period of trial work of up to nine months. 42 U.S.C. § 422(c). Smith’s *1318 statement that he was “totally disabled and unable to work” is relevant evidence of inability to work, but is not so conclusive as to justify summary judgment when there is evidence he was able to perform particular positions with the employer. See Talavera v. School Board, 129 F.3d 1214, 1217-20 (11th Cir.1997); Swanks v. Washington Metropolitan Area Transit Auth., 116 F.3d 582, 586-88 (D.C.Cir.1997).
Because reasonable accommodation includes reassignment to a vacant position when an employee like Smith cannot perform his current job at all, and because Smith’s statement in support of his social security claim does not by itself justify summary judgment, resolution of this case requires examination of the record to determine whether he presented evidence that he could perform any of the identified vacant positions. Smith failed to present evidence that he was physically able or otherwise qualified for many of the positions that became vacant between the time his dermatitis flared up in 1992 and his termination in March 1993. However, there was evidence he was physically able and otherwise qualified for at least two of the positions, a position in “Flexis-tieks,” and a kit assembly position, both of which became vacant in July 1992.
According to Jon Anderson, a registered nurse and Midland’s health and safety coordinator, Smith could have performed the essential functions of these two positions with some accommodation. Anderson testified in his deposition that he did not offer these positions to Smith because Smith’s physician, Dr. Singer, rated Smith “unable to work” and had not released him to return to work. Anderson thought it would be futile to offer the positions to Smith in July because in June, Dr. Singer had not released him to work in light assembly and Smith had unsuccessfully tried to work in shipping. Although Dr. Singer had rated Smith “unable to work” on his reports to Midland, there was evidence that Anderson and Dr. Singer interpreted the rating to mean Smith was unable to work at his old job and Dr. Singer was unaware of any other jobs Smith could perform with Midland. An “unable to work”'rating did not in this case rule out other work. Ordinarily, when a disabled employee’s doctor labeled an employee “unable to work,” Anderson would contact the doctor if a position became available that Anderson thought the employee could perform. Whether Smith was qualified for or could perform the positions that became vacant in July was a question of material fact.
Midland points out the ADA did not take effect until July 26, 1992, and argues any statutory obligation it has to consider reassignment extends only to positions vacant after that date. Se.e Smith v. United Parcel Service of America, Inc., 65 F.3d 266 (2d Cir.1995); O’Bryant v. City of Midland, 9 F.3d 421 (5th Cir.1993). The Flexisticks and kit assembly positions became vacant in July and there is evidence that at least one of the positions remained vacant after the effective date of the ADA. Failure to consider reassignment to a position that remained vacant after the effective date could be a violation of the ADA.
Midland also argues any obligation it has to consider reassignment extends only to positions that become vacant very shortly after an employee becomes disabled. The EEOC’s interpretative guidelines state reassignment should be considered only if “the position is vacant within a reasonable amount of time.” The guidelines go on to state a reasonable amount of time should be determined “in light of the totality of the circumstances,” and give as an example a position that becomes vacant a week after a disabled employee requested reassignment. 29 C.F.R. § 1630.2(o) (App.). Here, the two positions in question became vacant approximately two months after Smith became unable to perform his old job. While this is considerably longer than the one-week example, it is not necessarily an unreasonably long time in light of the totality of the circumstances. According to Cathy Lynch, Midland’s human resources director, it was not uncommon for employees like Smith, who were on workers’ compensation leave, to return to work after a year, and it was company policy to look for vacant positions that injured employees could perform. The company did in fact continue to look for alternative positions for Smith long after May 1992. An issue of material fact remains as to whether it is reasonable to require Midland *1319 to consider reassigning Smith to either of the two positions that became vacant in July.
I would reverse the summary judgment in favor of Midland on Smith’s ADA claim. I am in agreement with the balance of the majority’s opinion.

. The EEOC regulations use the same language. Like the statute, 29 C.F.R. § 1630.2(m) uses the phrase "the employment position such individual ... desires,” and subsection (o) expressly provides that reasonable accommodation may include reassignment to a vacant position.

. The court went on to conclude it would be unduly burdensome for the city to reassign Daugherty because the city charter gave part-time employees like Daugherty lower priority than full-time employees to vacant positions. 56 F.3d at 699-700.

. See also the example in Section 1-3.4: "If an employee whose job requires driving loses her sight, reassignment to a vacant position that does not require driving would be a reasonable accommodation, if the employee is qualified for that position with or without an accommodation.” The EEOC booklet, Your Responsibilities As An Employer (1992), advises employers that "[w]hen an employee with a disability is unable to perform her present job even with the provision of a reasonable accommodation, you must consider reassigning the employee to an existing position that she can perform with or without a reasonable accommodation.”