

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-26-1997

# Krouse v. Amer Sterilizer Co

Precedential or Non-Precedential:

Docket
96-3669

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"Krouse v. Amer Sterilizer Co" (1997). *1997 Decisions.* Paper 231.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/231

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed September 26, 1997

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 96-3669

ROBERT V. KROUSE,

     Appellant

v.

AMERICAN STERILIZER COMPANY; LIBERTY MUTUAL
INSURANCE COMPANY; MICHAEL J. COUGHLIN; SCOTT
G. LIGHTNER; JOHN T. HARDIN; NANETTE S.
STAFFORD; JASON M. NUARA

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civ. No. 94-cv-00309)

Argued
July 22, 1997

Before: BECKER, MANSMANN and ROSENN,
Circuit Judges.

(Filed September 26, 1997)

       Wayne G. Johnson, Sr.
       Wayne G. Johnson, Jr. (ARGUED)
       558 West Sixth Street
       Erie, Pennsylvania 16507

        COUNSEL FOR APPELLANT


       Stephen X. Munger, Esquire
       Lisa A. Schreter, Esquire
        (ARGUED)
       Jackson, Lewis, Schnitzler
        & Krupman
       233 Peachtree Street, N.E.
       2400 Peachtree Center-Harris Tower
       Atlanta, Georgia 30303-1509

       COUNSEL FOR APPELLEES
       AMERICAN STERILIZER
       COMPANY, MICHAEL J.
       COUGHLIN, SCOTT G. LIGHTNER,

JOHN T. HARDIN

John D. Petruso, Esquire (ARGUED)
Fuller, Kinnunen, Petruso, Gamble,
 Fabian & Hall
373 Center Street
Meadville, Pennsylvania 16335

COUNSEL FOR APPELLEES
LIBERTY MUTUAL INSURANCE,
NANETTE S. STAFFORD,
JASON M. NUARA

OPINION OF THE COURT

MANSMANN, Circuit Judge.

After American Sterilizer Company ("AMSCO") placed him
on workers' compensation leave, channel welder Robert
Krouse filed this action against AMSCO and Liberty Mutual
Insurance Company, asserting retaliation claims under the
Americans with Disabilities Act, 42 U.S.C. S 12101 et seq.
(ADA), and discrimination claims under the Age
Discrimination in Employment Act, 29 U.S.C. S 621 et seq.
(ADEA). Relying on McNemar v. Disney Store, Inc., 91 F.3d
610 (3d Cir. 1996), cert. denied, 117 S.Ct. 958 (1997), the
district court determined that Krouse was judicially
estopped from claiming to be a "qualified individual with a
disability" under the ADA based on prior assertions of total

disability made in connection with applications for
disability and pension benefits. Since Krouse was estopped
from claiming to be a "qualified individual with a disability,"
the court reasoned, Krouse could not invoke the protection
of the ADA. Alternatively, the court held that Krouse's ADA
claims failed on the merits as a matter of law. The court
also held that Krouse's ADEA claims failed as a matter of
law. The district court granted the defendants' motions for
summary judgment.

We hold that a person's status as a "qualified individual
with a disability" is not relevant in assessing the person's
claim for retaliation under the ADA. Thus, the district court
erred in relying on McNemar to dismiss Krouse's ADA
retaliation claims. We also hold, however, that Krouse's
ADA and ADEA claims must fail on the merits as a matter
of law. Krouse is unable to articulate a prima facie case of
retaliation, and he is unable to offer any evidence which
would permit a trier of fact to conclude that AMSCO's
articulated reasons for its employment decisions were a

mere pretext for unlawful retaliation or discrimination. We will affirm the judgment of the district court. Since we do not rely on McNemar in affirming the judgment of the district court, we are not prompted to revisit that controversial decision at this time.

I.

AMSCO designs, manufactures, sells and services hospital equipment. Krouse began employment with AMSCO in 1974 as a member of the bargaining unit represented by Local 832 of the United Auto Workers ("UAW"). In 1989, Krouse became a channel welder. AMSCO evaluates channel welders pursuant to established performance and time standards set by AMSCO's industrial engineers for the completion of various work projects. Employees' "performance percentages" are calculated every week; fully trained channel welders are expected to pursue the applicable performance percentage standards.

On January 14, 1991, Krouse suffered a work-related back injury. Following this injury, Krouse's advising health care professionals placed certain medical restrictions on the

3

type of activity he could perform. From January 15, 1991 through May 20, 1994, AMSCO provided work assignments for Krouse that complied with his medical restrictions. From April 21, 1993 to June 21, 1993, Krouse was assigned to the Transitional Work Group ("TWG"), which provides light-duty work for employees who have suffered temporary injuries or illness. While Krouse was assigned to the TWG, AMSCO implemented requested modifications to the channel welder position in anticipation of his return.

Prior to his return to the channel welder position in June 1993, Krouse's doctor modified his medical restrictions and indicated that Krouse was able to perform the essential functions of the modified position. From January 1 to May 20, 1994, Krouse's performance percentages ranged between sixteen and thirty percent of the expected performance standard; other fully trained channel welders performed at or above fifty percent of the expected standard. During a March 31, 1994, meeting with Krouse's supervisor to discuss Krouse's performance level, Krouse stated that, since he was not "living up to" the supervisor's expectations, he was going to go home. Krouse's chiropractor excused Krouse from work the next day on the ground that he was totally disabled.

On April 20, 1994, Krouse received a medical release to

return to work. After reviewing the medical restrictions imposed by the chiropractor, Krouse admitted that no further accommodations were necessary to allow him to perform the essential functions of the modified channel welder position. Krouse also stated, however, that he was working to the highest percentage possible. AMSCO advised Krouse that his performance percentages were unacceptable. Krouse responded that AMSCO should provide Krouse with an assistant.

During this meeting, AMSCO also expressed concern about Krouse's frequent absences from work. During the eleven-month period in which he held the modified channel welder position, Krouse left the facility without prior notice more than fifty times for unscheduled visits with his chiropractor. Krouse's unscheduled absences often left AMSCO without a welder to perform critical production functions and resulted in substantial production delays and

backlogs. AMSCO asked Krouse to schedule appointments in advance, but Krouse responded that he could not guarantee the frequency or the time of his appointments.

On May 3, 1994, AMSCO performed another review of Krouse's performance and found that it ranged between twenty-five and thirty percent. Based on this evaluation, coupled with Krouse's admission that he was working to the highest percentage possible, AMSCO concluded that Krouse could not perform the essential functions of the channel welder position. AMSCO had provided Krouse all of the accommodations and modifications requested by his physician, and there were no other vacant positions available which Krouse could perform. On May 23, 1994, AMSCO placed Krouse on workers' compensation leave.

On February 21, 1995, Krouse was placed in a modified Dismantle and Tag position for which he had bid. This job required Krouse to perform duties which were consistent with his medical restrictions. Krouse returned to leave status on April 21, 1995, however, and he has not since returned to active status.

II.

On October 21, 1993, Krouse filed an action, Civ.A. No. 93-313-ERIE ("Krouse I"), alleging that AMSCO discriminated and retaliated against him in violation of the ADA. On August 8, 1995, the district court dismissed Krouse I with prejudice because of Krouse's failure to prosecute it. See Krouse v. American Sterilizer Co., 928 F.

Supp. 543, 544 & n.1 (W.D. Pa. 1996). Krouse did not appeal that order.

On November 10, 1994, Krouse filed a second action, Civ.A. No. 94-309-ERIE ("Krouse II"), against AMSCO and Liberty Mutual, AMSCO's workers' compensation carrier. Krouse alleged retaliation under the ADA and age discrimination under the ADEA. On March 6, 1995, Krouse filed a third action, Civ.A. No. 95-55-ERIE ("Krouse III"), against AMSCO and Liberty Mutual. Krouse raised additional ADA retaliation and ADEA discrimination claims. On June 30, 1995, the district court consolidated Krouse II and Krouse III.

In his consolidated complaints, Krouse alleged that AMSCO retaliated against him for filing ADA charges with the Equal Employment Opportunity Commission in October 1992. Specifically, Krouse alleged that AMSCO retaliated by: (1) placing Krouse on workers' compensation leave on May 20, 1994; (2) failing to offer Krouse a disability pension; and (3) refusing to create an alternative position as a "Long Service Employee" under the collective bargaining agreement between AMSCO and the UAW. Krouse also alleged that AMSCO and Liberty Mutual harassed him by requiring him to undergo a functional capacity examination pursuant to the Pennsylvania Workers' Compensation Act. Krouse's age discrimination claims largely mirrored his ADA retaliation allegations. In his ADEA claims, Krouse alleged that the above employment decisions were motivated by age animus. With the possible exception of his harassment claim, Krouse did not allege disability discrimination under the ADA in the consolidated complaints.1

_____

1. Although Krouse did allege disability discrimination in Krouse I, those allegations were dismissed with the complaint and were not raised again. On appeal, Krouse attempts to argue issues relating to disability discrimination and failure to accommodate that were not raised in his consolidated complaints. Krouse's failure to include these claims in his consolidated complaints is fatal to his efforts here.

Under Rule 8 of the Federal Rules of Civil Procedure, a complaint must provide a defendant with "fair notice of what the plaintiff 's claim is and the grounds upon which it rests." Williams v. New Castle County, 970 F.2d 1260, 1265-66 (3d Cir. 1992) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Although the background sections of the complaints in Krouse II and Krouse III refer briefly to AMSCO's alleged failure to accommodate Krouse's disability, the complaints specifically allege that

each of the injuries for which Krouse seeks recovery under the ADA was based on unlawful retaliation or harassment. Indeed, Krouse acknowledged at his deposition that his ADA claims were based on retaliation, not failure to accommodate.

Although a complaint's allegations are to be construed favorably to the pleader, Williams, 970 F.2d at 1266, we will not read causes of action into a complaint when they are not present. The ADA is one statutory scheme, but it provides more than one cause of action. Where, as here, a plaintiff asserts a cause of action for retaliation under 42 U.S.C.

On September 28, 1996, the district court granted the defendants' motions for summary judgment as to each of Krouse's causes of action. Krouse appealed.2

III.

We begin our analysis by examining the framework for deciding a claim of unlawful retaliation under the ADA. The ADA retaliation provision, 42 U.S.C. S 12203(a), states that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge . . . under [the ADA]." Id. This provision is similar to Title VII's prohibition of retaliation. See 42 U.S.C. S 2000e-3(a). Accordingly, we analyze ADA retaliation claims under the same framework we employ for retaliation claims arising under Title VII. Stewart v. Happy Herman's Cheshire Bridge, Inc., 117 F.3d 1278, 1287 (11th Cir. 1997); Soileau v. Guilford of Maine, Inc., 105 F.3d 12, 16 (1st Cir. 1997). This framework will vary depending on whether the suit is characterized as a "pretext" suit or a "mixed motives" suit. See Woodson v. Scott Paper Co., 109 F.3d 913, 920 (3d Cir. 1997), petition for cert.filed, 66 U.S.L.W. 3157 (U.S. Aug. 4, 1997) (No. 97-266). Krouse proceeded under a "pretext" theory, and so will our analysis.

_____

S 12203(a), we will not find an implicit cause of action for failure to accommodate under 42 U.S.C. S 12112(a). This is true even when the complaint's background section makes a brief reference to failure to accommodate. AMSCO was not placed on "fair notice" that Krouse intended to pursue a failure to accommodate claim.

2. The district court had jurisdiction pursuant to 28 U.S.C. S 1331. We have jurisdiction pursuant to 28 U.S.C. S 1291. We conduct a de novo review of the district court's order granting summary judgment in favor of the appellees. We must apply the same test used by the district court; namely, we must be satisfied that there is "no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether to affirm the district court's order granting the defendants' motions for summary judgment, we must draw all inferences in favor of Krouse, as the non-moving party.

We begin, as all "pretext" cases begin, with the prima facie case. To establish a prima facie case of retaliation under the ADA, a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action. Woodson, 109 F.3d at 920 (prima facie case of retaliation under Title VII); Quiroga v. Hasbro, Inc., 934 F.2d 497, 501 (3d Cir. 1991) (same); Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir. 1989) (same); see also Stewart, 117 F.3d at 1287 (prima facie case of retaliation under ADA); Morgan v. Hilti, Inc., 108 F.3d 1319, 1324 (10th Cir. 1997) (same); Soileau, 105 F.3d at 16 (same).

If an employee establishes a prima facie case of retaliation under the ADA, the burden shifts to the employer to advance a legitimate, non-retaliatory reason for its adverse employment action. Woodson, 109 F.3d at 920 n.2. The employer's burden at this stage is "relatively light: it is satisfied if the defendant articulates any legitimate reason for the [adverse employment action]; the defendant need not prove that the articulated reason actually motivated the [action]." Id.

If the employer satisfies its burden, the plaintiff must be able to convince the factfinder both that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action. Id.; see also St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 519 (1993) ("It is not enough . . . to disbelieve the employer; the factfinder must believe the plaintiff 's explanation of intentional discrimination.") (emphasis omitted); Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061, 1067-68 (3d Cir. 1996) (en banc) (explaining how plaintiff may satisfy burden), cert. denied, 117 S.Ct. 2532 (1997). The plaintiff must prove that retaliatory animus played a role in the employer's decisionmaking process and that it had a determinative effect on the outcome of that process. Woodson, 109 F.3d at 931-35 (discussing proper standard to apply in Title VII retaliation case). The burden of proof remains at all times with the plaintiff. Id. at 920 n.2.

To obtain summary judgment, the employer must show that the trier of fact could not conclude, as a matter of law, (1) that retaliatory animus played a role in the employer's decisionmaking process and (2) that it had a determinative effect on the outcome of that process. This may be accomplished by establishing the plaintiff's inability to raise a genuine issue of material fact as to either: (1) one or more elements of the plaintiff's prima facie case or, (2) if the employer offers a legitimate non-retaliatory reason for the adverse employment action, whether the employer's proffered explanation was a pretext for retaliation. See Jalil, 873 F.2d at 708 (explaining shifting burdens under Title VII retaliation); see also Stewart, 117 F.3d at 1287 (explaining shifting burdens under ADA retaliation).

The district court offered two alternative grounds for granting AMSCO's motion for summary judgment on Krouse's ADA retaliation claims. First, the court concluded that Krouse was judicially estopped from asserting his status as a "qualified individual with a disability" and was therefore not protected by the ADA. Second, the court concluded that Krouse failed to establish a case of retaliation, both because Krouse failed to establish a prima face case and because Krouse failed to adduce any evidence rebutting AMSCO's articulated reasons for its employment decisions.

A.

The district court concluded that in order to come within the protection of the ADA, a plaintiff must establish that he or she is a "qualified individual with a disability." Slip Op. at 12 (citing 42 U.S.C. S 12112(a)). The court concluded that Krouse was judicially estopped from asserting his status as a "qualified individual with a disability" by virtue of his previous assertions of total disability in connection with applications for Social Security disability insurance benefits, disability pension benefits, and disability credit insurance benefits.

In Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355 (3d Cir. 1996), we stated that "absent any good explanation, a party should not be allowed to gain an

advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible

theory." Id. at 358 (quotation omitted). We held that the doctrine of judicial estoppel, which prevents a litigant from asserting a position inconsistent with one previously asserted, applies when: (1) the party's position is inconsistent with a position taken in the same or in a previous proceeding and (2) the party asserted either or both of the inconsistent positions in bad faith. Id. at 361.

In McNemar v. Disney Store, Inc., 91 F.3d 610 (3d Cir. 1996), cert. denied, 117 S.Ct. 958 (1997), the plaintiff claimed that he was discharged from his employment due to his HIV-positive status in violation of the ADA. The district court determined that McNemar was judicially estopped from claiming status as a "qualified individual with a disability" under the ADA based on his prior sworn statements, made in his application for Social Security disability benefits, New Jersey state disability benefits, and an exemption from repayment of an educational loan from the Pennsylvania Higher Education Agency, that he was totally and permanently disabled and unable to work. Id. at 615-16.

We affirmed the judgment of the district court. We reasoned:

> McNemar has represented to one federal agency and to the agencies of two different states that he was totally disabled and unable to work--while now, in claiming relief under the [ADA], he states that he is a qualified person with a disability . . . .

Id. at 618 (internal quotation omitted). We observed that McNemar's previous statements were "unconditional assertions as to his disability" and inability to work. Id. (quotation omitted, emphasis supplied). We concluded that "the district court was well within its discretion to hold that McNemar is estopped from arguing now that he is`qualified' under the ADA." Id. at 617 (internal quotation omitted).

The district court applied McNemar to this case and concluded that Krouse was barred by the doctrine of judicial estoppel from asserting status as a "qualified individual with a disability." Slip Op. at 17. Since Krouse

10

was estopped from claiming to be a "qualified individual with a disability," the court reasoned, Krouse could not invoke the protection of the ADA.

The district court erred in this regard. Unlike a plaintiff in an ADA discrimination case, a plaintiff in an ADA

retaliation case need not establish that he is a "qualified individual with a disability." By its own terms, the ADA retaliation provision protects "any individual" who has opposed any act or practice made unlawful by the ADA or who has made a charge under the ADA. 42 U.S.C. S 12203(a). This differs from the scope of the ADA disability discrimination provision, 42 U.S.C. S 12112(a), which may be invoked only by a "qualified individual with a disability." An individual who is adjudged not to be a "qualified individual with a disability" may still pursue a retaliation claim under the ADA. Cf. Soileau, 105 F.3d at 16 (plaintiff may assert ADA retaliation claim "even if the underlying claim of disability fails"). Thus, Krouse was permitted to pursue his retaliation claims under the ADA.

McNemar has been the object of considerable criticism.3

_____

3. In a thoughtful opinion, the Court of Appeals for the District of Columbia Circuit reasoned that since the Social Security Administration does not take into account the possible effect of reasonable accommodation on a claimant's ability to work, receipt of Social Security benefits cannot automatically preclude an individual from being a "qualified individual with a disability" under the ADA, a status that expressly considers the possibility of reasonable accommodation. Swanks v. Washington Metro. Area Transit Auth., 116 F.3d 582, 584-87 (D.C. Cir. 1997). The court of appeals squarely rejected McNemar, reasoning that "the Third Circuit's decision . . . disregards the fact that Social Security disability determinations take no account of reasonable accommodation." Id. at 587; see also Robinson v. Neodata Servs., Inc., 94 F.3d 499, 502 n.2 (8th Cir. 1996)(Social Security determinations are "not synonymous with a determination of whether a plaintiff is a `qualified person' for purposes of the ADA"). Recognizing that the ADA's definition of "qualified individual with a disability" differs from the definition of "totally disabled" under the Social Security Act, the Court of Appeals for the Seventh Circuit concluded that "representations made in benefits applications will not be conclusive as to whether one is a `qualified individual with a disability' under the ADA." Weigel v. Target Stores, __ F.3d __, __ n.6, 1997 WL 526163 (7th Cir. Aug. 26, 1997).

11

Some of this criticism might be well-founded. Nevertheless, it is not the role of a panel to revisit a previous panel's decision. See 3d Cir. I.O.P. 9.1. It may be that this court, sitting en banc, will revisit the issue of judicial estoppel in this type of case. This is not the case to prompt such a discussion. Since Krouse's status as a "qualified individual with a disability" has no bearing on the outcome of this case, we do not have any reason to review McNemar or to ask the entire court to revisit McNemar at this time.4

McNemar remains the law in this circuit.5

_____

In a comprehensive enforcement guidance, the EEOC stated that the
court in McNemar "ignored [a] fundamental difference between the ADA
and [the Social Security Administration] and failed to conduct the
individual inquiry mandated by the ADA definition of `qualified individual
with a disability.' . . . McNemar was wrongly decided." EEOC
Enforcement Guidance on the Effect of Representations Made in
Applications for Benefits on the Determination of Whether a Person is a
"Qualified Individual with a Disability" under the Americans with
Disabilities Act of 1990 (ADA)(Feb. 12, 1997), reprinted in 3 EEOC
Compliance Manual (BNA) N:2281, at 2290 (1997). McNemar was decided
before the EEOC issued its enforcement guidance. Likewise, the
associate commissioner of the Social Security Administration wrote in an
information memorandum that "the ADA and the disability provisions of
the Social Security Act have different purposes, and have no direct
application to one another." Daniel L. Skoler, Assoc. Comm'r, Soc. Sec.
Admin., Disabilities Act Info. Mem., at 2 (June 2, 1993), reprinted in 2
Social Security Practice Guide, App. S 15C[9], at App. 15-402 (Matthew
Bender & Co. 1997). McNemar has also been criticized in academia. See,
e.g., Anne E. Beaumont, This Estoppel Has Got to Stop: Judicial
Estoppel and the Americans with Disabilities Act, 71 N.Y.U. L.Rev. 1529,
1567-68 (1996) (criticizing reasoning behind application of judicial
estoppel to ADA cases).

4. Judge Becker is persuaded by the authorities set forth in footnote 3
that McNemar was wrongly decided, and believes that the court should
reconsider it at its first opportunity.

5. We do take this opportunity to express our concern that district courts
in this circuit are misapplying McNemar without first considering the
unique facts of that case. See McNemar, 91 F.3d at 618 (McNemar's
representations were unconditional assertions at to disability and
inability to work). Here, the district court's error was clear -- since
Krouse's status as a "qualified individual with a disability" is not
relevant

B.

The district court did not rest its decision to grant
AMSCO's motion for summary judgment solely on judicial
estoppel and McNemar. The court also concluded that
Krouse's retaliation claims failed on the merits as a matter
of law.

As to Krouse's claim that he was placed on workers'
compensation leave in retaliation for filing an EEOC charge
in October 1992, the district court concluded that Krouse
"adduced no evidence" to support the claim"aside from the

fact he was placed on worker's compensation some 19 months after filing an EEOC charge in October, 1992." Slip Op. at 22-23. We agree. After carefully reviewing the record, we are convinced that Krouse has not proffered any evidence establishing a causal connection between his EEOC charge and AMSCO's decision to place Krouse on workers' compensation leave.

Nineteen months passed between the time Krouse filed his EEOC charge and the time AMSCO placed Krouse on workers' compensation leave. In Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997), we held that "the mere fact that adverse employment action occurs after a complaint will ordinarily be insufficient to satisfy the plaintiff's burden of demonstrating a causal link between the two events." Id. at ___. As noted in Robinson, our cases are "seemingly split" on the question of whether the timing of the allegedly retaliatory action can, by itself, ever support a finding of causation. Id. at ___. Compare Woodson, 109 F.3d at 920 (stating in dicta that "temporal proximity between the protected activity and the termination is

_____

to his retaliation claims, the court's reliance on McNemar was misplaced. Even where an individual's status as a "qualified individual with a disability" is relevant to the resolution of an ADA claim, courts should carefully adhere to the two-part test of Ryan Operations, 81 F.3d at 361, before concluding that previous representations as to disability and inability to work judicially estop the individual from asserting such status. Courts should not assume that McNemar always bars an individual's ADA claims merely because prior representations or determinations of disability exist in the record.

13

sufficient to establish a causal link") with Delli Santi v. CNA Ins. Cos., 88 F.3d 192, 199 n.10 (3d Cir. 1996) ("timing alone will not suffice to prove retaliatory motive"). We need not resolve this apparent conflict here. Even if timing alone could ever be sufficient to establish a causal link, we believe that the timing of the alleged retaliatory action must be "unusually suggestive" of retaliatory motive before a causal link will be inferred. Robinson, 120 F.3d at ___; see, e.g., Jalil, 873 F.2d at 708 (causal link established where "discharge followed rapidly, only two days later, upon Avdel's receipt of notice of Jalil's EEOC claim"). Here, the timing of the allegedly retaliatory employment action cannot, standing alone, support a finding of causal link.

We have also held that the "mere passage of time is not legally conclusive proof against retaliation." Robinson v. Southeastern Pa. Transp. Auth., 982 F.2d 892, 894 (3d Cir.

1993) ("SEPTA"). When temporal proximity between protected activity and allegedly retaliatory conduct is missing, courts may look to the intervening period for other evidence of retaliatory animus. For example, in SEPTA, we stated: "The temporal proximity noted in other cases is missing here and we might be hard pressed to uphold the trial judge's finding [of causal link] were it not for the intervening pattern of antagonism that SEPTA demonstrated." Id. at 895 (internal citation omitted); accord Woodson, 109 F.3d at 920-21. Here, Krouse did not offer any evidence that suggests that AMSCO's decision to place him on workers' compensation leave was in any way linked to his filing of an EEOC charge nineteen months earlier. Indeed, AMSCO returned Krouse to the channel welder position in June 1993 -- after Krouse filed his EEOC charge. Absent evidence of intervening antagonism or retaliatory animus, we conclude that the passage of time in this case is conclusive and that Krouse failed to establish a causal link as a matter of law.

The district court also concluded that AMSCO articulated a legitimate, non-retaliatory explanation for its employment decision -- that Krouse could not perform to his expected level as a channel welder. The court concluded that Krouse failed to adduce evidence that would adequately rebut this explanation. Slip Op. at 24 n.9. Again, we agree.

14

AMSCO supported its decision to place Krouse on workers' compensation leave with uncontroverted evidence that Krouse performed at a level of between twenty-five and thirty percent, even though Krouse performed duties which were within Krouse's medical restrictions. Other fully trained channel welders performed at or above fifty percent performance efficiency. AMSCO also demonstrated that Krouse's frequent unscheduled absences resulted in substantial production delays and increased costs.

In order to survive a motion for summary judgment in a pretext case, the plaintiff must produce "sufficient evidence to raise a genuine issue of fact as to whether the employer's proffered reasons were not its true reasons for the challenged employment action." Sheridan, 100 F.3d at 1067. This is ordinarily done by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them `unworthy of credence.' " Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994) (emphasis omitted) (quoting Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 531 (3d Cir. 1993)).

On appeal, Krouse does not seriously contest the evidence supporting AMSCO's decision to place Krouse on workers' compensation leave. Rather, Krouse contends that an allegedly similarly situated employee, Dan Oler, did not file an EEOC charge and was retained as a channel welder. The district court rejected this comparison, concluding that "Oler was not similarly situated to Krouse." Slip Op. at 23 n.8. We agree.

Oler is a channel welder who suffered a temporary injury. Oler's performance percentages during his recovery were on average substantially higher than Krouse's. Oler performed at a rate of twenty-three to eighty-five percent during his recovery, while Krouse's performance percentage remained between sixteen and thirty percent. Oler also showed significant improvement as time progressed; during the last month of his recovery, Oler's performance rate remained above sixty percent. In contrast, Krouse's disability was permanent, and Krouse admitted that he would not exceed thirty percent without assistance. As the district court

15

concluded, "Oler's performance efficiency was higher and showed a potential for improvement, whereas Krouse's did not." Slip Op. at 43. The fact that AMSCO retained Oler in the channel welder position does not, as a matter of law, demonstrate such weaknesses or implausibilities in AMSCO's articulated legitimate non-retaliatory reason for its decision to place Krouse on workers' compensation leave so as to permit a trier of fact to disbelieve AMSCO.

As to Krouse's claim that he was denied a disability pension in October 1994 in retaliation for filing an EEOC charge in October 1992, the court concluded that there is "insufficient evidence as a matter of law to establish a causal connection between Krouse's filing of EEOC charges, or other protected activity, and his denial of a disability pension." Slip Op. at 24. Again, we agree. In addition to the lack of temporal proximity between the 1992 protected conduct and the 1994 decision to deny Krouse's application for a disability pension, there is no evidence that the members of the pension plan committee were aware of Krouse's protected activity.6

As to Krouse's claim that he was denied a position under Section K of the collective bargaining agreement, the court concluded that Krouse failed to establish a prima facie case of retaliation. Slip Op. at 26. At the time Krouse requested a Section K position, the UAW/AMSCO collective bargaining agreement provided that "employees who have grown old in

the service of the company, but who are no longer
physically able to perform their usual work, will be given

_____

6. In addition, the decision to deny Krouse a disability pension was made
by a bilateral committee of the independent Pension Board -- not
AMSCO. The pension plan committee was comprised of three UAW
representatives and one AMSCO representative. Although a joint labor-
management committee may be a "covered entity" under the ADA, 42
U.S.C. S 12111(2), Krouse did not name the pension plan committee or
any union representatives as defendants in these actions. Krouse has
not offered any evidence tending to support his theory that AMSCO can
be held accountable for the decision to deny Krouse's application for
disability pension benefits. As noted in the text, even if AMSCO could be
implicated in the decision to deny Krouse's application for disability
pension benefits, Krouse's claim would fail as a matter of law due to his
inability to establish a prima facie case.

16

consideration by the company and an effort will be made to
provide them with some sort of employment which they are
able to do." AMSCO and the UAW agreed that, in order to
qualify for Section K treatment, an employee must be at
least fifty-five years of age with at least thirty years of
AMSCO employment.

It is undisputed that Krouse did not meet these
requirements. These specific terms, while not in the
language of the agreement itself, were agreed to by both
AMSCO and the union and represent a reasoned
interpretation of the phrase "employees who have grown old
in the service of the company." There is no evidence that
Section K positions were offered to individuals who did not
meet the age and term of service requirements. Likewise,
there is no evidence that Section K positions were
discriminatorily withheld from qualified individuals with
disabilities or from individuals who engaged in activity
protected by the ADA. In other words, there is no evidence
suggesting that AMSCO declined to provide Krouse with a
Section K position in retaliation for Krouse's protected
activity.

Krouse's final ADA claim, his only claim brought under
42 U.S.C. S 12112(a), is that Liberty Mutual and AMSCO,
for the purpose of harassing Krouse, unlawfully required
Krouse to undergo a functional capacity examination and
filed a utilization review petition before the Pennsylvania
Bureau of Workers' Compensation. As to AMSCO, the
district court concluded that there was no evidence that
AMSCO required Krouse to undergo a functional capacity
examination or a utilization review. Slip Op. at 35. We

agree. On appeal, Krouse does not point to any evidence of record that would establish AMSCO's liability under this cause of action.

As to Liberty Mutual, the district court held that the insurance company was not a "covered entity" and was therefore not liable to Krouse under the ADA. Slip Op. at 28-35. Section 12112(a) prohibits discrimination by a "covered entity." A "covered entity" is an "employer, employment agency, labor organization, or joint labor-management committee." 42 U.S.C. S 12111(2). Krouse asserts that Liberty Mutual acted as AMSCO's agent and is

therefore Krouse's "employer" under the ADA. See 42 U.S.C. S 12111(5)(A) ("employer" includes employer's agent). The district court concluded that there was insufficient evidence as a matter of law to support Krouse's agency theory. After carefully reviewing the record, we agree with the district court. Krouse's assertion that Liberty Mutual acted at the direction of AMSCO to harass Krouse in violation of the ADA is simply without foundation in this record. 7 On this record, Liberty Mutual is not an agent of AMSCO; it is therefore not a covered entity under the ADA.

We find the district court's careful and exhaustive discussion of its merits-based reasons for granting the defendants' motions for summary judgment on Krouse's ADA claims to be correct as a matter of law, and we agree with the district court that the defendants were entitled to summary judgment on all of those claims.

As Krouse's ADEA claims mirror his claims under the ADA, we may dispose of them without further discussion. It is sufficient for us to note that Krouse did not offer any evidence from which a trier of fact could conclude that AMSCO's articulated reasons for its treatment of Krouse were a mere pretext for unlawful age discrimination.

We will affirm the judgment of the district court.

_____

7. In his appellate brief and at oral argument, Krouse referred to alleged evidence of an agency relationship taken from a deposition in the unrelated case of Cassidy v. American Sterilizer Co., Civ.A. No. 95-62-ERIE. Before the district court, Krouse relied on the same deposition testimony in an effort to reopen discovery. The district court denied Krouse's motion, concluding that Krouse (1) failed to explain how the testimony would preclude summary judgment and (2) did not provide a reasonable explanation as to why the "newly discovered evidence" was

not previously obtained. Slip Op. at 54 (citing Pastore v. Bell Tel. Co. of
Pa., 24 F.3d 508, 511 (3d Cir. 1994)). Krouse does not argue on appeal
that the district court erred in denying his motion to reopen discovery,
and if faced with the question we would find that the court properly
denied Krouse's motion. Accordingly, the Cassidy  evidence is not part of
this record, and we do not consider it.

18


A True Copy:
Teste:

Clerk of the United States Court of Appeals
for the Third Circuit

19